HUTCHINGS (UNITED STATES v.). See Case No. 15,429.

## Case No. 6,953.
### HUTCHINS v. TAYLOR.
[5 Law Rep. 289.]

Circuit Court, D. Rhode Island. Sept., 1842.

INVOLUNTARY BANKRUPTCY—ACT OF BANKRUPTCY —ASSIGNMENT.

1. An assignment, made by debtors, subsequent to the passage of the bankrupt act of 1841 [5 Stat. 440], and before it was to go into operation, of all their property, in trust, securing to certain creditors a preference and priority of payment over their general creditors, is of itself an act of bankruptcy, subjecting the debtors to be decreed bankrupts on the petition of creditors.
[Cited in Beekman v. Wilson, 9 Metc. (Mass.) 439.]

2. The clause in the bankrupt act relative to assignments, &c., made by a debtor after the first day of January, 1841, was designed to give a retrospective effect only as to voluntary bankruptcy.
[Cited in Day v. Bardwell, 97 Mass. 246.]

3. The meaning of the word "future," in the first clause of the second section of the bankrupt act, is future, with reference to the passage of the act.
[Cited in Ex parte Quackenboss, Case No. 11,-489.]
[Cited in Swan v. Litchfield, 4 Cush. 576.]

4. The words "in contemplation of bankruptcy," in the second section of the bankrupt act, mean simply in contemplation of a state of bankruptcy, or a known insolvency and inability to carry on business, and a stoppage in business.
[Cited in Morse v. Godfrey, Case No. 9,856; Everett v. Stone, Id. 4,577; Ashby v. Steere, Id. 576.]

This case came before the court upon an adjourned question in bankruptcy from the district court of Rhode Island, upon a petition by Theodore Hutchins to have George W. Taylor and Benjamin F. Taylor decreed bankrupts. The act of bankruptcy, alleged to have been committed, was "making a fraudulent conveyance, assignment, sale, and other transfer of their lands, tenements, goods, chattels, and evidences of debt." Upon the hearing, the district judge ordered that the following question be adjourned into the circuit court, namely; "whether the assignment of the said George W. Taylor & Co., (a copy of which is herewith presented) being an assignment in trust of all their property, made the eighteenth day of December, A. D. 1841, and securing to certain creditors of the said George W. Taylor & Co., a preference and priority of payment over their general creditors, be such an act of bankruptcy as will authorize the court agreeably to the said

petition to declare them bankrupts." The assignment referred to above was as follows: "Know all men by these presents, that we, George W. Taylor, and Benjamin F. Taylor, both of the city and county of Providence, in the state of Rhode Island, copartners in company, under the name and firm of George W. Taylor & Co., for and in consideration of the trusts hereinafter declared, and of the sum of one dollar to us paid by Amasa Manton, of said city of Providence, the receipt of which said sum is hereby acknowledged, have given, granted, bargained, sold and conveyed, and by these presents do give, grant, bargain, sell and convey unto him, the said Amasa Manton, his heirs and assigns, all and singular the entire stock of goods and stock in trade held by us, whether situate in the store occupied by us, on Weybosset street, or elsewhere in said city of Providence, or wherever else said goods or any portion of them may be situate. Also all and singular the counting room and store furniture, scales, weights, measures and other articles used in said store, or in the prosecution of our business. Also all sums of money due and payable to us by note, book account, or otherwise, together with the books of account and all and every evidence of such indebtedness. And also pew number 84, in Grace church, in said city of Providence. To have and to hold the same with full power and authority to use our names or the names of said firm in the collection or adjustment of said debts, to him the said Amasa Manton, his heirs and assigns; but in trust, nevertheless, to sell and dispose of said personal property, to collect said sums of money, due and payable to us, using a reasonable discretion as to the times and modes of selling and disposing of said property as it respects making sales for cash or on credit at public auction, or private sale, and with the right to compound or compromise with any person or persons indebted to us for the said sum or sums of money due and payable from such person or persons to us, taking a part for the whole wherever the said trustee shall deem it expedient to do so, and then in trust to dispose of the proceeds of such sales and of such collections in manner following, to wit: First. To the payment of all the expenses attending the drawing and execution of this deed, the execution of the trusts herein contained, and a reasonable compensation to said trustee for his services. Second. To the payment of all notes, drafts, or checks, made and executed by us, which have been indorsed, guaranteed, or the payment thereof otherwise secured by the aforementioned Amasa Manton, or by the firm of Manton & Hallett, at our request, or for our accommodation; all notes, drafts, or checks, made and executed by any other person or persons which have been indorsed, guaranteed, or the payment thereof otherwise secured by the aforementioned Amasa Manton, or by the firm of Manton & Hallett at our request and for our accommodation." Sev-

eral other liabilities are then enumerated under this class, and then it is provided, that "after payment of all the debts and expenses hereinbefore mentioned, the balance of said proceeds, or so much thereof as may be necessary for that purpose, shall be appropriated to the proportional payment of all other debts due from us the said George W. Taylor & Co.: provided, that no payment shall be made to any creditor, other than those named in the preceding classes, who shall not agree to accept his proportional part in full discharge of his debt, and execute a release of all his claims upon us the said George W. Taylor & Co., within four months from the date of this deed; and the proportion or dividend of any creditor refusing or neglecting to execute such release, shall be paid to us the said George W. Taylor & Co. In testimony whereof, we have hereunto set our hands and seals at said Providence, this 18th day of December, 1841." Another deed of assignment of the same date from Benjamin F. Taylor to Amasa Manton, conveyed certain property in trust, (1.) To pay the expenses of the assignment. (2.) To the payment of all sums due from the assignor individually and not as a copartner with any other person. (3.) To apply the residue to the trusts specified in the other deed of trust.

Whipple & Rivers and Hazard & Jencks, for petitioner.

Richard W. Greene and James M. Clarke, for George W. Taylor & Co.

STORY, Circuit Justice. This case has, from accidental circumstances, remained for consideration a longer period than has been usual in bankruptcy. The arguments have been very elaborate, and have exhausted the subject. The case, however, after all, lies within a narrow compass; and mainly turns upon the true construction of the second section of the bankrupt act of 1841, c. 9 [5 Stat. 442]. That section declares, that "all future payments, securities, conveyances, or transfers of property, or agreements, made or given by any bankrupt, in contemplation of bankruptcy, and for the purpose of giving any creditor, indorser, surety, or other person any preference or priority over the other creditors, and all other payments, securities, conveyances, or transfers of property, or agreements made or given by such bankrupt, in contemplation of bankruptcy, to any person or persons whatever, not being a bona fide creditor or purchaser for a valuable consideration, without notice, shall be deemed utterly void, and a fraud upon this act." The section further provides, that "in case it shall be made to appear to the court, in the course of proceedings in bankruptcy, that the bankrupt, his application being voluntary, has subsequent to the first day of January last, or at any other time, in contemplation of the passage of a bankrupt law, by assignment, or otherwise, given, or secured any prefer-

ence to one creditor over another, he shall not receive a discharge unless the same be assented to by a majority in interest of those of his creditors who have not been so preferred." The seventeenth section of the act declares, that this act shall "take effect from and after the first day of February next." The act passed and was approved on the nineteenth day of August, 1841. Now, the question adjourned by the district court, is, whether the assignment of Taylor & Co., (stated in the case) being an assignment in trust of all their property, made on the eighteenth of December, 1841, (some months after the passage of the act, but before it was to go into operation,) securing to certain creditors of Taylor & Co., a preference and priority of payment over their general creditors, be an act of bankruptcy within the first section of the act, which declares, that whenever any person being a merchant, &c., shall among other things, "make any fraudulent conveyance, assignment, sale, gift, or other transfer of his lands, tenements, goods or chattels, credits, or evidences of debt, &c.," he may, upon petition of any one or more of his creditors, &c., be declared a bankrupt. Now, under the English bankrupt laws, it has been settled, for at least three quarters of a century, that an assignment of the nature stated, made by any person within the scope of the bankrupt laws, is a fraud upon those laws, and of itself an act of bankruptcy. The cases cited at the bar, are conclusive as authorities upon this point; and put it upon the ground, that it is against the whole policy and objects of those laws, and must supersede their operation. See Linton v. Bartlet, 3 Wils. 47; Butcher v. Easto, 1 Doug. 294; Eckhardt v. Wilson, 8 Term R. 140; Ex parte Bourne, 16 Ves. 145; Worseley v. De Mattos, 1 Burrows, 467, 477; Wilson v. Day, 2 Burrows, 827; Alderson v. Temple, 4 Burrows, 2239; Harman v. Fishar, Cowp. 117, 123; Rust v. Cooper, Id. 629, 633; Tappenden v. Burgess, 4 East, 230; Newton v. Chantler, 7 East, 138, 143. Our bankrupt act of 1841, c. 9, §§ 2, 4, demonstrates, that congress had an earnest intention to prevent all preferences and priorities in favor of particular creditors, and to secure the assets of all persons, falling within the purview of the act, for distribution equally among all their creditors pro rata. This is the main scope, and object and policy of the act. It would, therefore, be a matter of surprise, if the act had permitted preferences and priorities to particular creditors, going even to the extent of sweeping away all the property of the debtor, to the exclusion of his general creditors, in cases like the present case, without rebuke or prohibition.

The whole question, therefore, turns upon the language of the two first clauses of the act. The first declares all future payments, securities, conveyances, or transfers of property, made in contemplation of bankruptcy, and to give a preference or priority to par-

ticular creditors, void, and a fraud upon the act. The second, declares all other payments, securities, conveyances, or transfers of property, void, that is, all such payments, securities, conveyances, or transfers, made, &c., in contemplation of bankruptcy, but without any such intention of preference or priority to any creditor or purchaser, with notice, void, and a fraud upon the act. So that it is perfectly manifest, that when a person, within the purview of the act of 1841, makes any such payment, security, conveyance, or transfer of property, in contemplation of bankruptcy, it is a fraud upon the act, and void, if it is designed to give such a preference or priority; or if not so designed, if the creditor or purchaser has notice, that the debtor contemplates bankruptcy. In each case, however, the payment, security, conveyance, or transfer, must be after, and not before the passage of the act. For the other clause of the section relative to assignments, &c., made by a debtor after the first day of January last, that is, after the first day of January, 1841, uses expressions, which plainly show, that it was designed to give a retrospective effect only as to voluntary bankrupts, and not to involuntary bankrupts. And the rule here, is, "Exceptio probat regulum." Besides; the universal construction of statutes is, that they are prospective and not retrospective, unless the language absolutely requires such an interpretation. "Lex dat formam futuris non preteritis negotiis." What, then, is meant by "future" in the first clause of the second section of the act? Does it mean future to the passage of the act, or future to the first day of February, 1842, when the act was to take effect? My judgment is, that it means future with reference to the passage of the act. The argument against this construction appears to me not well founded in general principles of construction; and it is incompatible with the obvious objects and purposes of the act. Such a construction of the words of every act ought to be made, if consistent with its terms, as shall give full effect to its objects and policy, and not defeat them. "Ut res magis valeat, quam pereat." Now, there is no ground to say, that the word "future" may not in this connection apply reasonably and sensibly, and according to the ordinary proprieties of language, as well as legal interpretation, to the passage of the act. It is not a well founded argument to assert, that the act was no act until the first day of February, 1842. It was an act, and became a law by the very terms of the constitution of the United States, as soon as it was approved by the president, although its operation was suspended until the first day of February, 1842. It is the time of approval, which makes it a law; and if not a law at that time, it never can be one; for the president has no authority to approve what shall be a law only at a distant period. He may then be dead, or have a successor in office. He approves in presenti, and every

act of congress, upon such approval, becomes a present law. That law may be carried into effect in presenti, or in future, as its own terms justify or require.

But if this were not the natural or necessary interpretation of the language of statutes generally, no one can doubt, that it is competent for congress to provide, that particular provisions shall be in force or efficiency from the passage of any act, if such is its pleasure, although the general operation of the act is suspended until a future time. The very clause of this section, respecting assignments made since the first day of January, 1841, (long before the passage of this act,) demonstrates this; and no one can deny, that it must, from the passage of the act, be deemed to have possessed and retained its full potency, and virtue, and designed operation. It is true, that if the bankrupt act of 1841 had never gone into operation, there could have been no such proceeding as that of the present petitioner against Taylor & Co., in invitum, to be declared bankrupts. But it is equally true, that having gone into operation, all its provisions are to be deemed to be equally in force, and to have due effect, according to the language and intent of the act. Now, to me, at least, it seems impracticable, consistently with the known objects and policy of the act, to give any other interpretation to the word "future," in the connection, in which it stands, than that it means "future" to the passage of the act, not "future" to the act's going into operation. If the latter had been the intent of congress, similar language would have been used to that used in the bankrupt act of the fifth of April, 1800, c. 19, § 1, addressed to the same subject, of fraudulent conveyances; where it is said, "that from and after the first day of June next, if any merchant," &c., "shall make, or cause to be made, any fraudulent conveyance," &c. See Wood v. Owings, 1 Cranch [5 U. S.] 239. So here, the language in the bankrupt act of 1841, could have been, not "future," generally, but, "from and after the first day of February next," or, "from and after this act shall take effect," all payments, securities, conveyances, or transfers, &c., made in contemplation of bankruptcy, &c., shall be deemed utterly void, and a fraud upon this act. What would be the effect of giving to the bankrupt act of 1841, the construction contended for by the respondents' counsel? It would be to enable every debtor, at any time, between the nineteenth of August, 1841, and the first of February, 1842, in contemplation of bankruptcy, to make all such payments, securities, conveyances, or transfers, which he might choose, giving preferences and priorities, which the very act would treat as a fraud, and thus enable him to strip himself of every dollar of his property, in favor of his preferred creditors, and leave all the rest of his creditors without any payment or dividend. Now, if the act imperatively required such

an interpretation, I agree, that the court would be bound to follow it. But if another interpretation, equally consistent with the words of the act, carrying into full effect all the objects and policy of the act is presented, and makes the whole system harmonize for the same uniform purpose, and avoids the very mischiefs, which have been stated, it seems to me, that it is the duty of the court to obey and follow it. So far from the case of Wood v. Owings, 1 Cranch [5 U. S.] 239, shaking this interpretation, it rather aids and strengthens it; for the court put the case expressly upon the ground, that the words of the act required, that the fraudulent conveyance should be made after the first of June, and not before. The words "in contemplation of bankruptcy," used in the second section of the bankrupt act of 1841, do not mean in contemplation of committing an act of bankruptcy, within the bankrupt act, or in contemplation of taking the benefit of that act; but simply in contemplation of a state of bankruptcy, or a known insolvency and inability to carry on business, and a stoppage of business. It is the old meaning of the term bankrupt, when a man being insolvent, his bank or counter of business is broken up. See 2 Bl. Comm. 471, note. But I have had occasion in another case to examine this matter; and therefore do not here dwell upon it. No one can reasonably doubt that the assignment in the case at bar was in contemplation of bankruptcy in the sense above stated. See the next case of Arnold v. Maynard [Case No. 561]. It does not appear to me, that any thing in the first section of the act controls this interpretation. That section declares, who shall be the persons, who are within the provisions of the act, and the circumstances, under which they may proceed or be proceeded against under the act. I agree, that all its provisions, as to voluntary and involuntary bankrupts, are prospective; that the parties and the facts must exist, and fall within the predicaments pointed out after the passage of the act. But it by no means thence follows, that if the parties are in such predicaments at and after the passage of the act, and they afterwards do any of the things contemplated by the act, before the act take effect, or goes into operation, that, when it does go into operation, all the provisions of the act do not attach to and govern their own rights and the rights of the creditors. The act may well say, you must not in the intermediate time between the passage of the act and its going into operation, do such and such things, which are deemed a fraud upon this act; and if you do, you shall be liable, when the act goes into operation, to be thereafter and thereupon declared a bankrupt. That would at once be reasonable, and just, and appropriate. It would be a question not of time, but of case; not of whether you are liable to be declared a bankrupt; but when you

may be declared so. In my judgment, this is the very intendment of the act, as to the case in judgment. I shall send a certificate to the district court accordingly.

The certificate was as follows:
Circuit Court of the United States, Rhode Island, September, 1842. In the Matter of Theodore Hutchins, Petitioner, v. George W. Taylor, and Another, in Bankruptcy. It is ordered by this court, that the following answer be sent to the district court upon the question adjourned by that court into this court, namely. It is the opinion of this court, that the assignment of the said George W. Taylor & Co., referred to in the question, being an assignment in trust, of all their property, made on the eighteenth day of December, A. D. 1841, and securing to certain creditors of the said George W. Taylor & Co., a preference and priority over their general creditors, is an act of bankruptcy within the true intent and meaning of the bankrupt act of 1841, chapter 9, and as such, will authorize the district court, agreeably to the prayer of the petition of the said Theodore Hutchins, to declare them bankrupts. Joseph Story, One of the Justices of the Supreme Court of the United States.