ROBERT SWAN *vs.* JAMES LITTLEFIELD & another.

The discharge of a bankrupt, under the late bankrupt act of the United States, may be impeached by proving unlawful preferences and payments, made by him in fraud of the act, between the day when the same was passed, and the day when it took effect.

THIS was an action of assumpsit by the plaintiff as the indorsee of two promissory notes, signed by the defendants as copartners, one dated December 4th, 1839, and the other October 6th, 1841.

The defence relied upon was a discharge under the insolvent law of this commonwealth, which took effect on the 17th of January, 1842, and a discharge under the bankrupt law of the United States, which took effect on the 17th of August, 1842.

The plaintiff undertook to avoid these discharges, on various grounds, and, among others, he specified unlawful payments and preferences of preëxisting creditors, within six months previous to the application of the defendants for the benefit of the insolvent law (January 15th, 1842); they being then insolvent in fact, and contemplating the making of such application. The plaintiff also alleged the same acts and concealments of property, as frauds upon the bankrupt law of the United States, made and committed subsequent to the 19th of August, 1841, being the day of the passage of the act; the defendants being then insolvent, and intending an application for the benefit of the bankrupt law.

The only evidence offered by the plaintiff, under the last branch of his specification, tended to show, that, subsequent to the 19th of August, 1841, (the day of the passage of the bankrupt act) and previous to the 1st of February, 1842, (the day when the act went into operation) the defendants conveyed and delivered certain property for the purpose of preferring preëxisting creditors; the defendants being then in fact insolvent, and contemplating an application for the benefit of the bankrupt law.

The presiding judge of the court of common pleas, *Bigelow,* J., before whom the case was tried, instructed the jury upon this evidence, that such preferences so made by the defendants, between the 19th of August, 1841, and the 1st of February, 1842, did not avoid the discharge obtained by them under the bankrupt law; whereupon the jury returned a verdict for the defendants, and the plaintiff alleged exceptions.

*A. L. Cushing,* for the plaintiff, relied on *Hutchins* v. *Taylor,* 5 Law Rep. 289.

*J. J. Clarke,* for the defendants, referred to *Wood* v. *Owings,* 1 Cranch, 239; *M'Menomy* v. *Roosevelt,* 3 Johns. Ch. 446; *Commonwealth* v. *Marshall,* 11 Pick. 350; *Medford* v. *Learned,* 16 Mass. 215; *Judd* v. *Ives,* 4 Met. 401; *Griswold* v. *Pratt,* 9 Met. 16, 19; *Washburn* v. *Bump,* 10 Met. 392; *Tebbetts's Case,* 5 Law Rep. 259, 267; *Hutchins* v. *Taylor,* 5 Law Rep. 289; *Chadwick's Case,* 5 Law Rep. 457; *Horton's Case,* 5 Law Rep. 462.

WILDE, J.   This case depends on the bankrupt act of 1841, *c.* 9, § 2, (5 U. S. St. at Large, 442,) by which it is provided, " That all further payments, securities, conveyances, or transfers of property, or agreements, made or given by any bankrupt, in contemplation of bankruptcy, and for the purpose of giving any creditor, indorser, surety, or other person, any preference or priority over the other creditors, shall be deemed utterly void, and a fraud upon this act."

At the trial the plaintiff introduced evidence tending to prove, that subsequent to August 19th, 1841, (the day of the passage of the bankrupt act) and prior to February 1st, 1842, (the day when the act went into operation) the defendants conveyed and delivered certain property for the purpose of preferring preëxisting creditors, they, the defendants, being then insolvent and contemplating bankruptcy.   Upon this evidence, the judge ruled, and so instructed the jury, that such preferences did not avoid the discharge obtained by them under the bankrupt act.

This ruling is supported by *Chadwick's Case,* 5 Law Rep. 457, in which it was held, that an assignment made by debtors subsequent to the passage of the bankrupt act, but before it was to go into operation, of all their property, in trust for certain preferred creditors, would not prevent their discharge and certificate under the act, on their voluntary petition.   The word " future" in the above-cited clause in the second section of the bankrupt act, was held to refer to the day when the act took effect.   But a contrary construction was given to this clause by judge Story in the case of *Hutchins* v. *Taylor,* 5 Law Rep. 289, and we all concur in his construction of that clause.   " The act," as judge Story remarks, " became a law by the very terms of the constitution of the United States, as soon as it was approved by the president, although its operation was suspended until the 1st of February, 1842."

The act therefore might effectually prohibit the doing of any acts between the time of its passage, and the time when it was to go into operation, if such was the intention of its framers; and we cannot doubt that such was their intention.

And we think it is expressed with sufficient certainty. The natural meaning of the word "future" has reference to the time of the passage of the act; and the object and policy of the act clearly show that such was its intention. Another clause in the same section prohibits the granting of any discharge to a bankrupt, who had, subsequently to the 1st day of January before the passage of the act, given or secured any preference to one creditor over another, in contemplation of the passage of a bankrupt law, unless the same should be assented to by a majority in interest of those of his creditors, who had not been preferred. This clause has a retrospective operation, and strongly evinces the intent of congress to prohibit all preferences to evade the bankrupt act, although made previous to its passage; and we think it incredible, that congress should have intended to allow six months for all the bankrupts in the United States to evade the act by the transfer of all their property to favorite creditors, against the manifest object and policy of the act.

In *Chadwick's Case,* Irwin, J., admits that where a statute requires something to be done in future, or forbids that which was lawful before to be done in future, and there should not be found, in any other part, language to restrict, qualify, enlarge, or show another meaning than the words naturally import, it takes effect from its passage, however inconvenient or injurious the consequences. But the learned judge was of opinion, that other sections in the bankrupt act did show another meaning to the word "future" in the second section.

But it appears to us, that the intent of congress is so clearly expressed in that section, that it is not to be restricted or qualified, in its construction, by the other provisions in the act. The intent was, we think, to prohibit all preferences of one or more creditors over others, in the intermediate time between the passage of the act and its going into operation, although the prohibition could not be enforced until after the act went into operation. It is undoubtedly true, that in giving a construction to this section, we are to take into consideration every other provision in the section, which has any tendency to explain its true meaning. But thus considering

all the provisions of the act, we are of opinion, that the language of the clause in question in the second section is sufficiently clear, notwithstanding the other provisions of the act.                                   *Exceptions sustained.*