(Decided 10th December, 1869.)

---

WILLIAM H. CORNER *vs.* CHARLES R. MALLORY, Assignee in Bankruptcy, Claimant of property attached in the hands of EDGAR G. MILLER, Garnishee of JOHN S. MOODY.

*Attachment—Construction of Section 14 of the U. S. Bankrupt Act, approved March 2d, 1867.*

An attachment on warrant issued within four months prior to the 1st of June, 1867, is within the 14th section of the U. S. Bankrupt Act, ap-

Corner *vs.* Mallory, Assignee.

proved March 2d, 1867, by which attachments on mesne process against the property of a bankrupt, made within four months, next preceding the commencement of the proceedings in bankruptcy, are dissolved.

APPEAL from the Court of Common Pleas.

The cause was argued before BARTOL, C. J., BRENT, MILLER and ALVEY, J.

*A. W. Machen*, for the appellant.

A foreign attachment is not *mesne* process. It is original. The attachment is the principal, and the writ of summons, representing the old *capias*, ancillary. The judgment upon the summons is only a judgment for the purposes of the attachment, and is incapable of operating as a judgment *in personam*. The common trustee process of New England, which gave rise to much litigation under the Bankrupt Act of 1841, is quite different. There the action *in personam* against the defendant is principal, and the attachment ancillary. In *Ex parte Foster*, 2 *Story*, 140, Judge Story distinguished the ordinary trustee process, or *mesne* process, from a foreign attachment. The Bankrupt Act of 1867, being in *pari materia*, must be construed in the light of these decisions. And see *Flower vs. Parker*, 3 *Mason*, 251. Blackstone's definition of mesne process: " being such as intervenes between the commencement and end of a suit," excludes such an attachment as this, which is itself the commencement and foundation of the whole proceeding. 3 *Black. Com.*, 279 *and* 415.

The jurisdiction of the State Court having attached before the Bankrupt Act went into practical operation, cannot be devested, except in a clear case. The power of Congress over State proceedings for the collection of debts, is only implied from the express power to legislate upon the subject of bankruptcy. When the express power is exercised, the ground is occupied by the legislation of Congress; and all State laws inconsistent with the work-

ing of the bankrupt system, thus created and put in force, are then suspended. *Sturges vs. Crowninshield,* 4 *Wheat.,* 193. But the implied power to annul State attachments, or other judicial proceedings, cannot be exerted, until the express power is exerted. Nor can it be supposed that Congress intended anything so unreasonable as the abrogation of State remedies for adjusting the rights of creditor and debtor, without supplying another operative system in its place. But by the terms of the 50th section of the Bankrupt Act, it did not go into operation until the 1st day of June, 1867. Meanwhile, the jurisdiction of the Court of Common Pleas had completely attached, by a *bonâ fide* proceeding under the Maryland statute.

The construction contended for on the other side gives a retroactive operation to the Bankrupt Law, and tends to defeat vested rights; and, upon general principles of interpretation, ought not to be adopted without necessity. *Marsh vs. Higgins,* 9 *C. B.,* 563; *Williams vs. Smith,* 4 *H. & N.,* 558; *Moon vs. Durden,* 2 *Exch.,* 22; *Calder vs. Ball,* 3 *Dall.,* 386; *Dash vs. Van Kleeck,* 7 *Johns.,* 477; *Taylor vs. Carryl,* 20 *How.,* 596.

*John H. Thomas,* for the appellee.

The action of the Court was justified by the express language of the Bankrupt Law, sec. 14.

The law commenced on the day of its approval, and was, therefore, in operation when the attachment was issued, for all purposes, except those mentioned in the proviso to the fiftieth section. *Matthews vs. Zane,* 7 *Wheaton,* 211; *Perry vs. Langley,* 7 *Am. Law Register (N. S.),* 429, 435; *Hutchins vs. Taylor,* 5 *Law Report,* 289; *Swan vs. Littlefield,* 4 *Cushing,* 576.

Most important rights were conferred and restrictions imposed, to commence from the date of its approval, showing that Congress meant it to take effect from that date,

in all but the excepted particulars.   See secs. 23, 27, 29, 39 and 44.

Even if it were not in operation when the attachment was issued, when it did take effect, it related back and dissolved every attachment issued within four months preceding the institution of proceedings by or against a bankrupt.

Congress may pass laws taking away vested rights or impairing the obligation of contracts.  Its undisputed power to pass bankrupt laws, affecting existing as well as future contracts, is a power to take away the creditor's vested right to realize his claim out of his debtor's future acquisition, and if applicable to subsisting contracts, impairs the obligation of them.   *Satterlee vs. Matthewson,* 2 *Peters,* 409, 413 ; *Planters' Bank vs. Sharp,* 6 *Howard,* 328.

The Bankrupt Act of 1841, ch. 4, entitled a creditor to a full discharge from all his debts.   The Supreme Court decided that this provision, if it stood alone, would dissolve an attachment issued before the institution of proceedings in bankruptcy.  *A fortiori* must the Act of 1867, have that effect, when it not only discharges the debtor from his liability, but expressly enacts that the attachment shall be dissolved.   *Peck vs. Jenness,* 7 *Howard,* 612 ; *Curtis vs. Barnum,* 25 *Connecticut,* 370; *Hilliard on Bankruptcy,* 130, *note.*

It is the general policy of bankrupt laws, in every country and State, to dissolve attachments issued before the institution of proceedings under them, so as to effect an equal distribution of the debtor's assets among his creditors.   *Hilliard on Bankruptcy,* 129, *sec.* 39–130, *note,* 133, *sec.* 42;  *Act of Congress* 1800, *sec.* 31, *p.* 428 *of Hilliard ; Harrison vs. Sterry,* 5 *Cranch,* 289, 301.

ALVEY, J., delivered the opinion of the Court.

This was an attachment on warrant, against a non-resi-

dent debtor, issued on the 11th day of April, 1867, and laid in the hands of several garnishees on the day after.

The garnishees appeared, on the return of the attachment, and pleaded "*nulla bona*" for themselves, and for the defendant, that he was never indebted, as alleged.

At the January Term thereafter, the appellee filed in the cause a claim to the property attached, and a motion to dissolve the attachment, upon the ground that on the 2d of July, 1867, and within four months after the attachment was issued, and within four months after the institution of the proceedings on which it was founded, proceedings in bankruptcy were duly instituted against the defendant in the attachment, in pursuance of the Bankrupt Law passed and approved on the 2d of March, 1867; and that within the four months, the defendant had been duly declared a bankrupt, and that the appellee had been duly appointed and qualified as his assignee, and that all the defendant's property had been conveyed to him, the appellee, as assignee, and that therefore the attachment ought to be dissolved.

To this claim and motion of the appellee, the appellant demurred, by which the facts alleged were admitted; whereupon the Court below overruled the demurrer, and quashed the attachment.

By the Act of Congress of 1867, entitled " An Act to establish a uniform system of bankruptcy throughout the United States," approved March 2d, 1867, in the fourteenth section, it is provided that there shall be assigned and conveyed to the assignee, " all the estate, real and personal, of the bankrupt, with all his deeds, books and papers relating thereto, and such assignment shall relate back to the commencement of said proceedings in bankruptcy, and thereupon, by operation of law, the title to all such property and estate, both real and personal, shall vest in said assignee, although the same is then attached on mesne process, as the property of the debtor, and shall

dissolve any such attachment made within four months next preceding the commencement of said proceedings."

It is clear, we think, that the attachment in this case is mesne process, and of the character embraced by the terms of the Act; and the only question is, shall the time be so computed back, from the commencement of the proceedings in bankruptcy, as to overreach and render dissolvable the attachment.

It is insisted for the appellant that the Act did not take effect in reference to such a proceeding as this, until the 1st day of June, 1867, and that the four months are not to be computed back of that day, so as to embrace this attachment, which issued on the 11th of April preceding. And in support of this position, the fiftieth section of the Act is relied on, which provides that the Act shall commence and take effect as to the appointment of officers, and the promulgation of rules, from and after the date of its approval; "provided, that no petition, or other proceeding under this Act, shall be filed, received, or commenced before the first day of June, Anno Domini eighteen hundred and sixty-seven."

That the Act was operative for many purposes from the time of its approval is manifest, and for several most important purposes other than those mentioned in the fiftieth section, as will appear from the thirty-ninth section, in regard to what acts shall constitute bankruptcy. But, in our view of the case, it is immaterial, so far as the question now before us is concerned, whether we suppose the Act to have been operative from its approval in reference to all other matters than those mentioned in the *proviso* to the fiftieth section; or whether, by the *proviso*, the general provisions of the Act, except as to the appointment of officers and the promulgation of rules, were suspended until the 1st day of June, 1867. For, though it be conceded that the latter supposition is the true construction, we think it clear that the attachment in this case was, notwithstanding,

within the purview of the fourteenth section of the Act, and therefore liable to be dissolved upon motion of the assignee of the bankrupt defendant.

The language of this last-mentioned section is broad and comprehensive. It is that, upon the assignment the property shall vest in the assignee by operation of law, " although the same is then attached on mesne process as the property of the debtor, *and shall dissolve any such attachment made within four months next preceding the commencement of said proceedings.*" It will be observed that it is not restricted and made to have reference to the time at which the Act was to become operative. Proceedings under the Act were suspended until the 1st of June, but it does not follow that Congress intended that attachments issued and levied previous to that time, but since the passage of the Act, should not be embraced by it, any more than acts constituting bankruptcy, in the contemplation of the thirty-ninth section, occurring after the passage of the Act, but before the 1st of June, should be excluded from its operation. We cannot suppose that it was the purpose of the law to leave unaffected all attachments that issued previous to the numerous cases in bankruptcy that occurred after the 1st of June and before the 1st of October, 1867; as, by the construction contended for, none but such attachments as issued after the 1st of June, and within four months of the commencement of proceedings in bankruptcy would be embraced. We discover nothing in the law to warrant such a construction. This period of four months was not intended to have reference to the 1st day of June, when the Act was to go into effect as to all its provisions, but was fixed as a period within which no preference should be gained by one creditor, by attachment, over the claims of other creditors of the bankrupt. And the law effects no hardship in dissolving such attachment, as the creditor's claim is not impaired, and he is only deprived of a lien and priority that he might other-

wise obtain to the prejudice of other creditors, and in violation of the policy of the law, which is to effect a fair and equal distribution of the property of the bankrupt among all his creditors.

In support of the construction that we have placed upon the fourteenth section of the Statute, we refer to the analogous cases of *Hutchins vs. Taylor*, 5 *Law Rep.*, 289; *Swan vs. Littlefield*, 4 *Cush.*, 574, and *Curtis vs. Barnum*, 25 *Conn.*, 370; the two former arising under the Bankrupt Act of 1841, and the latter under an Act of the State of Connecticut in relation to insolvent debtors. And in the last-mentioned case of *Curtis vs. Barnum*, the analogy is exceedingly strong, for there the statute provided that all attachments of the property of a debtor, made within sixty days preceding an assignment by him, under the provisions of the Act, should be dissolved, and the property attached vest, free from the attachment, in the trustee; and it was held that the Act applied to an attachment made within the sixty days preceding the day upon which the Statute had provided it should go into operation and effect.

The Court below, having dissolved the attachment in this case as being within the operation of the Bankrupt Law, it follows, from what we have said, that its judgment must be affirmed.

*Judgment affirmed.*

(Decided 10th December, 1869.)