## CHAMBERLAIN & CO. *v.* PERKINS.

The plea of discharge in bankruptcy should conclude with a verification and not to the country, as under the English statute.

As the law stood on March 15, 1867, in respect to assignments for the benefit of creditors, the schedule of creditors' names required to be filed should state also their residences, or the omission would be a defect in substance; but an allegation in a plea that the schedule "was filed in the probate office" is sufficient.

The United States bankrupt act of March 2, 1867, did not go into operation so as to suspend State insolvent laws until the first day of the following June, and therefore proceedings commenced under the State law on March 15, 1867, are not affected by the general bankrupt law.

THIS writ was entered April term, 1870, and is assumpsit by James M. Chamberlain & Co. against Winslow T. Perkins, upon an account annexed. The action was continued, and at the April term, 1871, the defendant moved for leave to plead the pendency of proceedings in insolvency, or under an assignment in this State; to the reception of which plea the plaintiff objected,—1, on the ground that the plea was offered too late, no allusion having ever been made to said proceedings in the affidavit for continuance at the first term, or at any subsequent term, until now; and 2, upon the ground that the plea, if received, was no bar to the maintenance of the action; nor did the facts therein set forth, if true, afford any good reason for delay or for a continuance of the cause.

The court admitted the plea (terms to be settled), and continued the action; and the plaintiff excepted.

The pleas are as follows: First, the general issue. "And for further plea in this behalf, by leave of the court the said defendant comes and defends, &c., when, &c., and says the plaintiffs their action aforesaid thereof against him ought not to have and maintain, because he says that on the fifteenth day of March, A. D. 1867, he was a citizen of Dover,-in the county of Strafford and State of New Hampshire; and on said fifteenth day of March, A. D. 1867, at said Dover, he made, executed, and delivered to Hiram F. Snow and Joshua Varney, both of said Dover, an assignment of all his property, estate, rights, and credits of every description, except such as was by law exempted from attachment and execution, in trust for the benefit of all the creditors of the said defendant, in proportion to their respective claims; and on said fifteenth day of March, A. D. 1867, made oath, duly certified on said assignment, that he had placed and assigned, and the true intent of said assignment was to place in the hands of his assignees, all his property of every description, except such as was by law exempted from attachment and execution, to be divided among all his creditors in proportion to their respective claims; that the said Snow and Varney, the assignees therein named, thereafterwards, to wit, at said Dover, on said fifteenth day of March, A. D. 1867, accepted said trust, and entered upon the discharge of their duties as such assignees under said assignment; that said assignees thereafterwards, to wit, at said Dover, on the twenty-fifth day of March, A., D. 1867, filed at the probate office for said county of Strafford a schedule of all the property embraced in said assignment, and a list of all the creditors of the said Winslow T. Perkins, verified by the oaths of the said assignees and of the said Winslow T. Perkins to be true, according to the best of their knowledge, information, and belief; that upon petition to the judge of probate for said county of Strafford, the time for filing a bond by said assignees was extended to the sixth day of April, A. D. 1867, and on the first day of April, A. D. 1867, the said assignees did make and execute to the judge of probate for said county of Strafford a good and sufficient bond with sureties, with a condition for the faithful performance and discharge of their duties as such

assignees, which said bond was approved by said judge, and on the fifth day of April, A. D. 1867, was filed at the probate office for said county of Strafford ; that proceedings under said assignment are still pending, and have never been settled and determined; that the claim and demand upon which the plaintiffs' said action is founded, contracted and existed prior to said fifteenth of March, A. D. 1867 ; that afterwards, to wit, on the fifteenth of April, A. D. 1867, the plaintiffs had notice of the said assignment, and did not then, within thirty days thereafter, or since, manifest their dissent thereto to said assignees or either of them ; and that the plaintiffs' said claim, demand, and debt, upon which the said action is founded, was and is provable under the said assignment, and that their said action, while the proceedings under said assignment are pending, cannot be maintained and prosecuted against the defendant ; and this he is ready to verify.

" Wherefore he prays judgment if the said plaintiffs their action aforesaid against him ought to have and maintain, and for his costs."

To this plea the plaintiffs demurred.

*Rolfe,* for the plaintiffs.

*S. M. Wheeler,* for the defendant.

BELLOWS, C. J. The plea was out of time, but it was within the discretion of the presiding justice to receive it, and that discretion is not open to revision, but the questions as to its sufficiency are properly raised by the demurrer.

It is objected that the plea should conclude to the country as under the English bankrupt law ; and such seems to be the rule in England, when the plea is general—1 Ch. Pl. 557, 558, and cases cited in note *z;* 3 Ch. Pl. 912 ; but this is in accordance with the terms of their statute of bankruptcy and contrary to the general rules of pleading, which, in the case of the introduction of new matter, requires that the plea should conclude with a verification. 1 Ch. Pl. 557. Besides, the demurrer here is general, and under that the plaintiff can take advantage only of defects in substance.

It is objected that the plea does not bring the case within the terms of the statute, and is therefore no answer to the action. The counsel for the plaintiffs assumes that this case is governed by Gen. Stats., ch. 126, but the assignment was made on March 15, 1867, and the General Statutes went into operation not until the first day of January after. Consequently, the validity of the assignment must be governed by chapter 134 of the Revised Statutes, and the law of July 3, 1861, ch. 2488, and the law of July 9, 1862, ch. 2594.

The first cause of demurrer is, that the plea does not allege that the debtor filed in the office of the register of probate within ten days a copy of the assignment, and a schedule of the property embraced in it with its estimated value, and the incumbrances thereon, and a list of the names and residences of all the creditors of the debtor, and the

amount and nature of the respective claims, verified by the oaths of the debtor and assignee. ·

The plea does allege that the debtor filed at the probate office a schedule of all the property embraced in the assignment, and a list of all the creditors of said Perkins, verified, &c.   The law then in force—of July 3, 1861, ch. 2488, sec. 1—required such schedule and a list of the names and *residences* of the creditors to be filed in the office of the register of probate, but it did not require a filing of a copy of the assignment, nor the estimated value of the property, nor the amount and nature of the respective claims of the creditors.   The plea, in this respect, is deficient only in not giving the residences of the creditors, and in stating that the filing was in the probate office and not in the register of probate's office. As to the latter objection, we are inclined to think that the probate office is substantially equivalent to the register of probate's office, and that they both mean the same thing, although it would have been much better to have used the language of the statute.   The only defect, then, in this part of the plea is, the omission to state that the residences of the creditors were given in the list so filed : and the question is, whether the plea is bad in substance on that account.   By the subsequent law of July 9, 1862, ch. 2594, sec. 1, the assent of creditors to such assignment shall be presumed, unless the contrary intent is manifested to the assignee within thirty days after they are notified of the assignment ; and the actions of such assenting creditors shall be discontinued, and their costs form a part of their claim against the estate of the debtor.   This somewhat stringent provision was enacted, it may be assumed, in view of the requirement that a schedule of the property and list of the creditors and their residences should.be filed, and thus give the creditors some means of ascertaining the character and validity of the assignment ; and we think this must have been, to some extent, at least, the object of that provision.

The plea in this case is in bar of the further prosecution of the suit, and it is based upon the law of July, 1862, sec. 1, ch. 2594, before cited.  Independent of that section the plea could avail nothing ; and, to enable the debtor to plead it with effect, he must show a substantial compliance with the provisions of the law which were designed to give the creditor the means of judging of the character and validity of the assignment, and consequently of .determining whether to give or withhold his assent.   These provisions, in respect to filing a schedule and list of creditors with their residences, are of that character ; and we cannot hold that anything short of a full compliance with those provisions will be sufficient to justify a presumption of assent so far as to maintain a bar to the further prosecution of the suit.

The great question, however, is, whether the State laws under which this assignment was made were in force at the time ; or whether they were suspended by the United States bankrupt law, which was approved March 2, 1867, while the assignment was made March 15, 1867. It is not contended by the defendant's counsel that these State laws were not suspended when the bankrupt law of the United States went

into operation. Indeed, it is quite clear upon authority that they were so suspended. These State laws are clearly within the purview of the law of congress. The two systems act upon the same subject-matter, upon the same persons, both debtors and creditors, upon the same rights, and generally have the same object, namely, the equal distribution of the debtor's assets among all his creditors ; and it is very obvious that both cannot go on without collision. In accomplishing the object of both systems, different means are used. Under the State laws, the assignee is selected by the debtor alone ; by the bankrupt law, he is chosen by the creditors. To enforce a faithful surrender and application of all the debtor's assets, and generally to ensure the good faith and fair dealing of the bankrupt, the avoiding of fraudulent preferences, and to ensure an equitable distribution of all his assets, the provisions of the bankrupt law are very stringent and effective.

Under the provisions of the federal constitution and from the nature of the case, the law of congress must be paramount. The two systems cannot stand together; it would be totally inconsistent with that uniformity which it was the object of the constitution to establish ; and so it is settled that as soon as congress has exercised its power of making a general bankrupt law, and it has gone into operation, the State insolvent laws are suspended. *Sturges* v. *Crowningshield*, 4 Wheat. 196, 197 ; *Ogden* v. *Saunders*, 12 Wheat. 213 ; In matter of *Eames*, 5 Law Reporter 118—S. C. 2 Story 322 ; *Com.* v. *O'Hara*, 6 Am. Law Reg. 765, District Court of Penn. ; Bump on Bankruptcy 430, and cases cited ; *Judd* v. *Ives*, 4 Met. 402 ; *Griswold* v. *Pratt*, 9 Met. 16 ; *Blanchard* v. *Russell*, 13 Mass. 12, 13 ; *Day* v. *Bardwell*, 97 Mass. 246.*

The remaining question is, whether the United States bankrupt law went into operation at its passage, or not until the first day of June after. The last section is as follows : " This act shall commence and take effect, as to the appointment of the officers created hereby and the promulgation of rules and general orders, from and after the date of the approval ; provided that no petition or other proceeding under this act shall be filed, received, or commenced before the first day of June, Anno Domini 1867." These provisions are unusual, and not altogether free from ambiguity ; but, after careful consideration, we are inclined to the opinion that the law did not go into effect so as to suspend the State insolvent laws until the first day of June, 1867. It is very clear that no law was in force under which proceedings in bankruptcy could be commenced until that time. And until then there was no law of congress in existence that covered the ground occupied by the State insolvent laws,— that is, none that was operative ; and until there was, the State laws were in force.

---

* And see *Meekins, Kelly & Co.* v. *Their Creditors*, 19 La. An. 497, 498 (1867) ; *Martin* v. *Berry*, 37 Cal. 208–222 (1869). But see *Reed* v. *Taylor*, 32 Iowa 209–213 (1871)—(opinion by COLE, J.,—DAY, C. J., dissenting).
                                                                    REPORTER.

The mere fact that congress had power to establish uniform laws on the subject of bankruptcies throughout the United States did not take from the States the power to make such laws until congress had *exercised* the power; *that* was settled in *Sturges* v. *Crowningshield*, before cited; and it would seem to follow, logically, that until congress had put into operation laws on that subject with which State laws would come into collision, the latter would remain in force. The mere passage of a law by congress, to take effect at a future time, could not have the effect to supersede State laws until it went into effect, any more than to repeal a former statute. Nor can the law of congress be regarded as having taken effect in the sense of suspending the State laws, because provision is made for appointing officers under it, and promulgating rules and orders immediately on its passage. Indeed, it is a fair implication from this provision, that it takes effect for no other purpose until June 1, 1867. In fact, as no proceedings under it can, by its express terms, be commenced until then, the law must substantially remain inoperative until that time has arrived.

Had it been the purpose of congress to suspend all State insolvent laws for three months before the law of congress was to take effect as a substitute, we should naturally have expected that purpose to have been manifested in terms more explicit than any we find here. The fact that the law was to take effect immediately, so far as to authorize the appointment of officers and the promulgation of rules and orders, furnishes no sound reason for holding the State laws to be suspended; and so we think it was decided under the bankrupt law of 1841, which in its general provisions took effect several months after its passage. That act passed August 19, 1841, to take effect February 1, 1842. It provided, in sec. 2, that all future payments, &c., in contemplation of bankruptcy, and for the purpose of giving any person preference or priority, shall be deemed void and a fraud on the act; and it was held that such payment, &c., made after the passage of the act and before February 1, 1842, came within the terms of the act, upon the ground that the word future had reference to the time of the passage of the act, and not to the time it went into operation,—*Hutchins* v. *Taylor*, 5 Law Rep. 289, per STORY, J., U. S. circuit court, holding that congress might provide that particular provisions of the act shall be in force from its passage, while the general operation of the act is suspended until a future time.

So *in re Tibbits*, 5 Law Rep. 259, 267, where certain acts, as " the application of trust funds to his own use," were prohibited after the passing of the act, it was held by STORY, J., in U. S. circuit court, that this meant the date of the approval of the act, and not the time when the law went into operation.

The doctrine of *Hutchins* v. *Taylor* was fully sustained in a similar case in *Swan* v. *Littlefield*, 4 Cush. 574; and yet it was held that proceedings, which were commenced under the insolvent laws of Massachusetts at any time before the bankrupt law of congress went into operation, were valid and were not affected by that law, even

although the assignment was made after that law took effect. *Judd* v. *Ives*, 4 Met. 401.   So is *in re Horton*, in circuit court, U. S. district of Connecticut, 5 Law Rep. 462; and *in re Holmes*, Maine U. S. district court, 5 Law Rep. 360 ;—see, also, *Larrabee* v. *Talbott*, 5 Gill 426.

These authorities show that although the law of congress may have taken effect in some particulars, yet, so long as its general provisions are inoperative, it does not suspend State insolvent laws. And this principle is, in fact, decisive of the question here.

In accordance with such views is the well considered case of *Day* v. *Bardwell*, 97 Mass. 246, where, in an able opinion by GRAY, J., it is decided that until the bankrupt law of congress went into operation on the first day of June, 1867, the State insolvent laws were not suspended.   So is *Martin* v. *Berry*, 37 Cal. 208.   So it is laid down in Bump on Bankruptcy 470, and cases cited.

The case of *Perry* v. *Langley*, United States district court, Ohio, 7 Am. Law Reg. 429, is the other way ; but for the reasons we have suggested, we cannot adopt its conclusions.

Our conclusion, then, is, that the exception to the reception of the plea is overruled, that the demurrer is sustained on one point,—on the omission to set out the residences of the creditors,—and overruled as to the rest.